HATCH, J.
The defendant asks that the judgment obtained in this action be reversed, as excessive in amount, andas being without any legal basis for its support when tested by the rule which controls in measuring the compensation which may be awarded for the services for which a recovery has been had. The plaintiffs are lawyers, and the recovery has been had for services rendered by theinui a professional capacity. It appears that plaintiffs appeared in five actions or proceedings which were in their nature strictly legal proceedings. The other services consisted wholly in procuring grants' or franchises over certain highways in several towns in Westchester county, and in the city of Mt. Vernon, from the public authorities having control of the same. There was other services performed in ¿the city of New York in procuring the commissioner of street in the *616 Twenty-Third and Twenty-Fourth wards of that part of the city, known as the “ Annexed District, ” to consent to and recommend a change in motive power of defendants’s cars, and also services performedat Albany and elsewhere in and about the passage of an act relating to defendant’s charter'. The referee has refused to allow compensation for these services, and, as no appeal was taken from his determination in this respect, his decision thereon is final. The great bulk of the service for which a recovery was had related to that which was rendered in obtaining the franchise for defendant in-the towns of Westchester, Williamsbridge, South Mt. Vernon, and the city of Mt. Vernon. The record of this services is set out in the testimony of Breen ata great length and in infinite detail, and' is in the main not substantially disputed. Counsel for defendant, has, by an analysis of the record kept by the plaintiff Cohalan, reduced the time devoted to the service of the defendant to what he-terms “two months ’ solid work.11 We are not disposed to accept this view of the service rendered. The services began in January, 1891, and ended in February, 1893. The active services for which a recovery has been allowed began in the early part of May, 1892, and was concluded in Februrary, 1893. We think it apparent from the testimony that during this period Breen was occupied substantially the entire time, and his partner and clerk a portion. The entries which founded their way onto the book are quite meagre in character, and, when measured by practically uncontradicted testimony, they show that a portion only of the actual time devoted was accounted for therein. The character of the service was not such as could be readily itemized, and the testimony as a whole-shows that for much of it no entry was made. It is asserted that the service rendered by Breen in connection with the granting of the franchise in the town of Westchester was not only valueless, but, in its effect, dangerous and disastrous to the interests of defendant, as it imperiled its corporate existence. The basis of this claim is that the statute which authorized the extension of the road was in conflict with section 16 of article 3 of the constitution,, and that the action instituted by Breen necessarily brought the-court to an adjudication of that question. It may be here observed that no act of plaintiffs could cure the defect in defendant’s chartered rights, if any existed; and, if such rights were so precarious that they were liable to collapse if attention were called to it, there was no-very substantial basis upon which it stood, and any act which Breen did or omitted to do could not very seriously damage defendant, as the infirmity, assuming it to exist, was quite open and patent. To the extent that the road has been constructed and was then being operated, whether in Hew York City or elswhere, it is quite possible that defendant had acquired rights which would resist a successful attack upon the act in question. It is also true that, if it was defeated in its application for a grant in Westchester and other towns, it would be of little consequence whether its chartered rights for that localty were invalid or not. It is not easy to see that it risked much by attempting to assert rights which, unless asserted, left it dead as to the particular grant and those which followed. When Breen made the application for a grant to lay tracks im *617 Westchester, he was confronted by some applications from other companies for the same territory, and the grant was in fact made to-another company. If the matter has stopped here, defendant would have had no opportunity to exercise its corporate functions in the territory, whether its act was constitutional or otherwise. To meet this condition, Breen advised that the defendant possessed the right to lay its tracks, under its charter, without the consent of the public authorities, and the company acted upon this advice, and laid its track.
We do not find ourselves in harmony with the learned referee-in the view which he has taken of plaintiffs’ action respecting the method by which the grant in Westchester was obtained and secured to defendant. It was certainly audacious enough, but such audacity does not commend itself to us as a basis upon which to award compensation for legal service. Its tendency would be to put a premium upon lawlessness. It does not follow because we do not sanction this act that defendant’s action in this regard receives our commendation. The moral phase of this question, was as open then as now. The promptness, with which it availed itself of the advantage secured by Breen’a advice shows that it was little troubled with the abstract question of right and wrong involved in the transaction. We have, however, little difficulty in seeing that the advice and action thereunder was valuable and effective service to defendant, as its effect was to place the latter in a position to make application for other grants which it obtained, and to carry on a successful negotation for the acquirement of other territory where it now operates its cars. The assertion of the right to lay its tracks in Westchester, followed by its actual exercise, and the procuring and sustaining of an injunction when its acts were interfered with, had a marked effect upon subsequent, negotiations with the other companies. Before this, they demanded $300,000 in stock and $3,500 cash for such rights as they possessed. After, they sold all they sold all their interests for $25, 000. The service in the other towns was, in the face of a determined opposition, ably represented, and seems to have been conducted with ability and skill, and was certainly successful. It is. asserted that this service did not involve the slightest legal question. This may be true in a strict legal sense, and yet it was such service as lawyers frequently perform, and is generally regarded as in the line of professional employment. The record sustains this view, for it shows that the opposing roads engaged, to resist the efforts of Breen, Judge Mills and Judge Appel, who performed precisely the same service that Breen was then engaged in performing. It falls, therefore fairly within the lines of professional service, and is to be compensated as for such.
It is further claimed that Breen conclusively established the value of his service at the rate of $5,000 a year by rendering bills for that amount. The evidence tends to establish that he was anxious to be retained as permanent counsel of the i-oad, and made a proposition to accept his service at a compensation of $5,000 a. year for a term of vears, according to his testimony. Stadler sajs *618 ■at $3,000 per year, and Brandy $5,000, and that no length of service was suggested. The proposition was made, but defendant ■never acted thereon, and subsequently Breen withdraw the proposal, by letter, stating that he would render the service on the basis of •a quantum meruit. The bill was rendered prior to the letter, and Breen states was in consequence of the conversation he had with Brady respecting a permanent engagement. The rendition of these bills was not conclusive upon plaintiffs, and while it is pertinent •evidence as bearing upon the value which Breen attached to his service, yet it is evident that, while he might be quite willing to engage himself for a term of years at that rate of compensation, it would scarcely furnish the rate of compensation for services to be performed in a short time, and then terminate. But it is important now in fixing the amount that should be awarded as compensation. The service, from the time it first began, down to its termination, covered a period of something over two years. The active service was something less than a year. If Breen should be allowed for service at the price fixed by him cn a basis of a permanent retainer, it could in no event exceed $12,000, and from this sum would be deducted to amount that has been paid, $2,650, leaving a balance due of $9,350. In whatever way we view the ■case, and however we construe the testimony bearing upon the value ■of the service, the result reached must, from the nature of the case, be more or less an arbitrary sum. We are not inclined to undervalue the services rendered by Breen for which a recovery can be had, for of those that we reject we can see that they were valuable to defendant, measured by practical results. But, upon the whole testimony, we think that the referee has awarded too large a sum. In fair estimate, is should not exceed $15,000. The recovery will therefore be reduced to $15,000, with a proportionate amount of the extra allowance; and the judgment will be that the judgment appealed from be reversed, unless plaintiff stipulates within 20 days to reduce the same to the sum of $15,000, in which event the judgment will be affirmed, without costs.
All concur.